**HYUNDAI MOTOR AMERICA, INC.,**
Appellant (Defendant below),

v.

Sandra GOODIN, Appellee
(Plaintiff below).

No. 82S05–0406–CV–279.

Supreme Court of Indiana.

Feb. 22, 2005.

Julia Blackwell Gelinas, Robert B. Thornburg, Indianapolis, IN, Attorneys for Appellant.

Scott M. Cohen, John D. Barker, Chicago, IL, Attorneys for Appellee.

ON PETITION TO TRANSFER FROM THE INDIANA COURT OF APPEALS; NO. 82A05–0303–CV–155.

BOEHM, Justice.

We hold that a consumer may sue a manufacturer for economic loss based on breach of the implied warranty of merchantability even if the consumer purchased the product from an intermediary in the distribution chain. There is no requirement of "vertical" privity for such a claim.

**Facts and Procedural Background**

On November 18, 2000, Sandra Goodin test drove a Hyundai Sonata at Auto-Choice Hyundai in Evansville, Indiana. The car was represented as new and showed nineteen miles on the odometer. Goodin testified that when she applied the brakes in the course of the test drive she experienced a "shimmy, shake, pulsating type feel." The AutoChoice salesperson told her that this was caused by flat spots on the tires from extended inactivity and offered to have the tires rotated and inspected. After this explanation, Goodin purchased the Sonata for $22,710.00.

The manufacturer, Hyundai, provided three limited warranties: 1 year/12,000 miles on "wear items;" 5 years/60,000 miles

"bumper to bumper;" and 10 years/100,000 miles on the powertrain.[1] Hyundai concedes that brake rotors, brake calipers, and brake caliper slides were subject to the 5 year/60,000 mile warranty covering "[r]epair or replacement of any component originally manufactured or installed by [Hyundai] that is found to be defective in material or workmanship under normal use and maintenance." To claim under this warranty, a vehicle must be serviced by an authorized Hyundai dealer who is then reimbursed by Hyundai for any necessary parts or labor.

Three days after the car was purchased, Goodin's husband, Steven Hicks, took it back to AutoChoice for the promised tire work. Goodin testified that she continued to feel the shimmy but did nothing further for a month. On December 22, she took the car to a different Hyundai dealer, Bales Auto Mall, in Jeffersonville, Indiana, for an unrelated problem and also made an appointment six days later for Bales to inspect the brakes. Bales serviced the brake rotors for warping, but on May 1, 2001, Goodin returned to Bales complaining that the vehicle continued to vibrate when the brakes were applied. Bales found the rotors to be out of tolerance and machined them. Eighteen days later Goodin again returned to Bales, reporting that she still felt vibrations and for the first time also heard a "popping" noise. Goodin told the service advisor at Bales that she thought there may be a problem with the suspension, and Bales changed and lubed the strut assembly. Eleven days later

Goodin once more brought the car to Bales reporting continued shimmy and also a "bed spring type" noise originating from the brakes. The Bales mechanic was unable to duplicate the brake problem, but balanced and rotated the tires as Goodin had requested. One week later Goodin returned to Bales where she and Jerry Hawes, Bales's Service Manager, test drove the Sonata. The brake problem did not occur during the test drive, but Hawes identified a noise from the direction of the left front tire and repaired the rubber mounting bracket.

Goodin told Hawes that the brake problem had occurred about seventy percent of the time. The problem was worse when it was wet or cool, was consistently occurring when she drove down a steep hill near her home, and was less frequent when a passenger's weight was added. Goodin made arrangements to leave the car with Hawes at Bales, but, according to Hawes, over a several day period he could not duplicate the symptoms Goodin reported.

On August 24, 2001, Goodin took her car back to her original dealer, AutoChoice, reporting that the brakes "squeak and grind when applied." Goodin left the car with AutoChoice where the left front rotor was machined and loose bolts on the front upper control arm were tightened. Goodin testified that after this five-day procedure the brakes began to make the same noises and vibrations even before she arrived home.

---

1. On the "Buyers Order," AutoChoice Hyundai included the following preprinted language in capital letters:

ALL WARRANTIES, IF ANY, BY A MANUFACTURER OR SUPPLIER OTHER THAN DEALER ARE THEIRS, NOT DEALER'S, AND ONLY SUCH MANUFACTURER OR OTHER SUPPLIER SHALL BE LIABLE FOR PERFORMANCE UNDER SUCH WARRANTIES, UNLESS DEALER FURNISHES BUYER WITH A SEPARATE WRITTEN WARRANTY MADE BY DEALER ON ITS OWN BEHALF. DEALER HEREBY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ON ALL GOODS AND SERVICES SOLD BY DEALER....

In October 2001 Goodin hired an attorney who faxed a letter to Hyundai Motor America giving notice of her complaint and requesting a refund of the purchase price. On November 13, 2001, Goodin filed a complaint against Hyundai Motor America, Inc. alleging claims under the Magnuson–Moss Warranty Act, 15 U.S.C. §§ 2301–2312, for breach of express warranty, breach of implied warranty, and revocation of acceptance. On April 23, 2002, in anticipation of litigation, Goodin hired William Jones to inspect her car. Jones noted that the odometer read 57,918 miles and the car was still under warranty. Jones drove the car approximately five miles and found "severe brake pulsation on normal stops" which "was worse on high speed stops." Although he did not remove the tires to inspect the brake rotors, Jones opined that the rotors were warped and defective or there was "a root cause that has not been discovered and corrected by the repair facilities." His ultimate conclusion was that the "vehicle was defective and unmerchantable at the time of manufacture and unfit for operation on public roadways." Three weeks later, after the 5 year/60,000 mile warranty had expired, Goodin's husband, Hicks, replaced the rotors with new rotors from a NAPA distributor.[2] After this repair, according to Hicks, the pulsation went from "very bad" to "mild" and "less frequent."

Steven Heiss, District Parts and Service Manager for Hyundai Motor America served as the liaison between Hyundai and the dealers and provided warranty training. If a dealer is not performing repairs correctly, Hyundai, through its liaisons, addresses the problem. Heiss inspected Goodin's Sonata on October 21, 2002. At that point the Sonata had been driven 77,600 miles. He testified that during his twenty-three mile test drive he neither heard the noise described by Goodin nor felt any vibration from the brakes. However, Heiss did hear a "droning noise" which he later concluded was due to a failed left rear wheel bearing. He regarded this as a serious problem and not one caused by abuse or misuse of the vehicle. The wheel bearing would have been covered by the 5 year/60,000 mile warranty. Before his inspection, Heiss had been told that the rotors had been changed by Hicks five months earlier, and when Heiss measured the rotors he found that they were out of standard.[3] Heiss testified a miscast from the factory was one of a number of possible reasons for damaged rotors.

At the conclusion of a two day trial, the jury was instructed on all claims. Over defendants' objection, the instructions on implied warranties made no reference to a privity requirement. The jury returned a verdict for Hyundai on Goodin's breach of express warranty claim, but found in favor of Goodin on her claim for breach of implied warranty of merchantability. Damages of $3,000.00 were assessed and Goodin's counsel was later awarded attorneys' fees of $19,237.50 pursuant to the fee shifting provisions of the Magnuson–Moss Warranty Act.

Hyundai orally moved to set aside the verdict as contrary to law on the ground that Goodin purchased the car from AutoChoice and therefore did not enjoy vertical privity with Hyundai. The court initially denied that motion, but the following day set aside the verdict, holding lack of privi-

---

2. Hicks is an A.C. Certified Master Engine Machinist and Diesel Fuel Technician who had been trained in brakes during his certification process.

3. Hyundai's minimum standard thickness for rotors is 22.4 millimeters and the rotors on Goodin's car (bought from NAPA and installed by Hicks) measured 21.9 and 22 millimeters.

ty between Goodin and Hyundai precluded a cause of action for breach of implied warranty. Goodin then moved to reinstate the verdict, and, after briefing and oral argument, the trial court granted that motion on the ground that Hyundai was estopped from asserting lack of privity.

Hyundai appealed, asserting: (1) it was not estopped from asserting a defense of lack of privity; and (2) lack of vertical privity barred Goodin's recovery for breach of implied warranty of merchantability. The Court of Appeals agreed on both points, holding that Hyundai was not estopped from asserting that privity was an element of Goodin's prima facia case, and, because privity was lacking, Goodin did not prove her case. *Hyundai Motor Am., Inc. v. Goodin,* 804 N.E.2d 775, 781 (Ind.Ct.App.2004). The Magnuson–Moss Warranty Act looks to state law for the contours of implied warranties. The Court of Appeals was "not unsympathetic" to Goodin's claims but regarded itself as bound by a footnote in *Martin Rispens & Son v. Hall Farms, Inc.,* 621 N.E.2d 1078, 1084 n. 2 (Ind.1993), where this Court stated: "In Indiana, privity between the seller and the buyer is required to maintain a cause of action on the implied warranties of merchantability." *Id.* at 784. We granted transfer. *Hyundai Motor Am., Inc. v. Goodin,* 812 N.E.2d 808 (Ind.2004).

### Vertical Privity

A. The *Relationship Between Federal and State Law in Claims Based on Implied Warranty of Merchantability*

 This case is brought under a federal statute. The Magnuson–Moss Warranty Act, 15 U.S.C. §§ 2301–2312 (2000), provides a federal right of action for consumers to enforce written or implied warranties where they claim to be damaged by the failure of a supplier, warrantor, or service contractor to comply with any obli-

gation under that statute or under a written warranty, implied warranty, or service contract. The Act also limits the extent to which manufacturers who give express warranties may disclaim or modify implied warranties, but looks to state law as the source of any express or implied warranty. *Schimmer v. Jaguar Cars, Inc.,* 384 F.3d 402, 405 (7th Cir.2004). As the Seventh Circuit recently put it: "Because §§ 2308 and 2304(a) do not modify, or discuss in any way, a state's ability to establish a privity requirement, whether privity is a prerequisite to a claim for breach of implied warranty under the Magnuson–Moss Act therefore hinges entirely on the applicable state law." *Voelker v. Porsche Cars N. Am., Inc.,* 353 F.3d 516, 525 (7th Cir. 2003).

Goodin's claim is for breach of the implied warranty of merchantability, not for violation of any substantive provision of the federal statute. Accordingly, her claim lives or dies on the resolution of an issue of state law, specifically whether Indiana requires privity between buyer and manufacturer for a claim of breach of implied warranty.

B. *Standard of Review*

 Hyundai does not dispute that under circumstances applicable here Indiana recognizes implied warranties of fitness for a particular purpose and implied warranties of merchantability. Ind. Code §§ 26–1–2–314, 315 (2003). Rather, Hyundai contends that under Indiana law, a buyer must be in vertical privity with a seller to impose liability on the seller for breach of an implied warranty. Whether Indiana law requires privity to sustain an action for breach of an implied warranty is purely a question of law and therefore is reviewed under a de novo standard. *See Griffith v. State,* 788 N.E.2d 835, 839 (Ind. 2003). An implied warranty of merchanta-

bility imposed by operation of law is to be liberally construed in favor of the buyer. *Frantz v. Cantrell,* 711 N.E.2d 856, 859 (Ind.Ct.App.1999).

### C. *Origins of Privity*

■ Indiana has adopted the Uniform Commercial Code, notably its provision that: "A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind...." Ind. Code § 26–1–2–314(1) (2004). Hyundai asserts, and the Court of Appeals found, Indiana law requires vertical privity between manufacturer and consumer when economic damages [4] are sought. *Hyundai,* 804 N.E.2d at 783. Goodin argues that traditional privity of contract between the consumer and manufacturer is not required for a claim against a manufacturer for breach of the implied warranty of merchantability, especially if the manufacturer provides a Magnuson–Moss express warranty with the product.

■ Privity originated as a doctrine limiting tort relief for breach of warranties. The lack of privity defense was first recognized in *Winterbottom v. Wright,* 10 M. & W. 109, 152 Eng Rep 402 (Ex. 1842). 2 *Hawkland, UCC Series,* § 2–318:1 at 771 (2001). In that case, the court sustained a demurrer to a suit by an injured coachman for breach of warranty by a third party who contracted with the owner to maintain the coach. In this century, however, *MacPherson v. Buick Motor Co.,* 217 N.Y. 382,

111 N.E. 1050 (1916), and *Henningsen v. Bloomfield Motors, Inc.,* 32 N.J. 358, 161 A.2d 69 (1960), established that lack of privity between an automobile manufacturer and a consumer would not preclude the consumer's action for personal injuries and property damage caused by the negligent manufacture of an automobile. "Vertical" privity typically becomes an issue when a purchaser files a breach of warranty action against a vendor in the purchaser's distribution chain who is not the purchaser's immediate seller. *Hawkland, supra,* at 771. Simply put, vertical privity exists only between immediate links in a distribution chain. *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.,* 714 N.E.2d 1218, 1228 n. 8 (Ind.Ct.App.1999). A buyer in the same chain who did not purchase directly from a seller is "remote" as to that seller. *Id.* "Horizontal" privity, in contrast, refers to claims by nonpurchasers, typically someone who did not purchase the product but who was injured while using it. 1 *James J. White & Robert S. Summers, Uniform Commercial Code* 585 (4th ed.1995). Goodin purchased her car from a dealership and is thus remote from the manufacturer and lacks "vertical" privity with Hyundai.

"Although warranty liability originated as a tort doctrine, it was assimilated by the law of contracts and ultimately became part of the law of sales." *Hawkland, supra,* at 771. But "privity is more than an accident of history. It permitted manufacturers and distributors to control in some

---

**4.** In *Reed v. Central Soya Co., Inc.,* 621 N.E.2d 1069, 1074 (Ind.1993), this Court defined economic damages under Indiana law as "the diminution in the value of a product and consequent loss of profits because the product is inferior in quality and does not work for the general purposes for which it was manufactured and sold." In this case, Goodin seeks only direct economic damages the decreased value of the Sonata by reason of the allegedly

defective brakes. Goodin seeks the difference between the actual value of the goods accepted and the value they would have had if they had been as warranted. *See* I.C. § 26–1–2–714(2). Damages can also be measured by the cost of replacement or the cost of repair. *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.,* 746 N.E.2d 941, 955–56 (Ind. 2001).

measure their risks of doing business." Richard W. Duesenberg, *The Manufacturer's Last Stand: The Disclaimer*, 20 Bus. Law 159, 161 (1964). Because vertical privity involves a claim by a purchaser who voluntarily acquired the goods, it enjoys a stronger claim to justification on the basis of freedom of contract or consensual relationship. It nevertheless has come under criticism in recent years, and this is the first opportunity for this Court to give full consideration to this issue.

### D. *Indiana Case Law*

Although this Court did not address the issue, even before the Products Liability Act, both the Court of Appeals and federal courts applying Indiana law held that a claimant was not required to prove privity to succeed in a personal injury action in tort based on breach of implied warranties. *Lane v. Barringer*, 407 N.E.2d 1173, 1175 (Ind.Ct.App.1980); *Dagley v. Armstrong Rubber Co.*, 344 F.2d 245, 252 (7th Cir. 1965) (drawing support from *J.I. Case Co. v. Sandefur*, 245 Ind. 213, 221–22, 197 N.E.2d 519, 523 (1964)); *Neofes v. Robertshaw Controls Co.*, 409 F.Supp. 1376, 1379 (S.D.Ind.1976). Three federal court decisions drew on these decisions to conclude that privity of contract is not required in Indiana to maintain a cause of action for personal injury based on breach of an implied warranty. *See Filler v. Rayex Corp.*, 435 F.2d 336, 337–38 (7th Cir.1970) (Indiana law does not require privity between manufacturer and plaintiff under theories of implied warranty, strict liability or negligence); *Dagley*, 344 F.2d at 254; *Karczewski v. Ford Motor Co.*, 382 F.Supp. 1346, 1352 (N.D.Ind.1974).

However, several Court of Appeals decisions subsequently held that recovery of economic loss for alleged failure of the expected benefit of the bargain based on breach of implied warranty under the UCC required a buyer to be in privity of contract with the seller. *See Candlelight Homes, Inc. v. Zornes*, 414 N.E.2d 980, 982 (Ind.Ct.App.1981); *Lane*, 407 N.E.2d at 1173; *Richards v. Goerg Boat & Motors, Inc.*, 179 Ind.App. 102, 384 N.E.2d 1084 (1979). *Corbin v. Coleco Industries*, 748 F.2d 411, 415 (7th Cir.1984), took the view that "[s]ubsequent Indiana cases have shed new light on Indiana's interpretation of implied warranty under the UCC, thus making it clear that privity is indeed required."

This Court has mentioned the common law privity requirement in the context of actions sounding in contract only once, and that in a footnote. *Martin Rispens & Son v. Hall Farms, Inc.*, 621 N.E.2d 1078 (Ind. 1993), addressed negligence and express and implied warranty claims by a farmer against both the direct seller and the grower of seed that allegedly damaged the farmer's crops. The footnote cited to the UCC and two Court of Appeals decisions and other courts have taken the footnote as settled Indiana law on this issue. As the Court of Appeals put it in its decision in this case:

> [T]he [footnote] indicates our supreme court's unequivocal acceptance that privity between a consumer and a manufacturer is required in order to maintain a cause of action for breach of an implied warranty of merchantability.... Any change in the law removing the privity requirement in implied warranty actions should be left to that court.... To the extent Goodin argues that this result is inequitable, we are not entirely unsympathetic. Whether the cons of the vertical privity rule outweigh the pros is something for either our supreme court or the General Assembly to address.

*Hyundai Motor America, Inc. v. Goodin*, 804 N.E.2d 775, 784, 788 (Ind.Ct.App. 2004). In *Martin Rispens*, the implied

warranty claims were rejected based on an effective disclaimer of implied warranty, under Indiana Code section 26–1–2–316(2) which permits parties to agree to exclude or modify implied warranties if done in a particular manner. The farmer did not present privity as an issue on transfer to this Court and neither party briefed it. It was not necessary to the decision. Accordingly, the language in *Martin Rispens,* though often cited, is dicta and we accept the invitation from the Court of Appeal to reconsider it.

Indiana law, as developed in the Court of Appeals, has already eroded the privity requirement to some degree. In *Thompson Farms, Inc. v. Corno Feed Products, Inc.,* 173 Ind.App. 682, 366 N.E.2d 3 (1977), the Court of Appeals permitted the plaintiff to recover on an implied warranty where it was shown that the contractual arrangements between the manufacturer and the dealer who sold to the plaintiff created an agency relationship; and the manufacturer's agents participated significantly in the sale both through advertising and personal contact with the buyer. Under those circumstances the Court of Appeals held that the manufacturer was a "seller" within the meaning of Indiana Code section 26–1–2–314. *Richards,* 179 Ind.App. at 112, 384 N.E.2d at 1092, involved a defective boat sold by a dealer where the manufacturer's agents also engaged in personal contact with the buyer by giving demonstrations and attempting to adjust the loss after the sale. The Court of Appeals then, following *Thompson Farms, Inc.,* held that the participation in the sale by the manufacturer was sufficient to bring it into the transaction as a seller within the requirements of Indiana Code section 26–1–2–314. However, if the plaintiff could not show perfect vertical privity or an exception to the rule, then the plaintiff could not prove the claim. *Candlelight Homes,* 414 N.E.2d at 982.

### E. *Statutory Developments in Indiana*

The Product Liability Act, Indiana Code § 34–20–2–1 *et seq.* (1999), does not require a personal injury plaintiff to prove vertical privity in order to assert a products liability claim against the manufacturer. *See Lane,* 407 N.E.2d at 1175. Even before the Product Liability Act in 1978, the requirement of privity of contract in warranty actions in Indiana began to erode in 1963 with the passage of the Uniform Commercial Code under section 2–318:

> A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

I.C. § 26–1–2–318. Section 2–318 was taken verbatim from the UCC as originally prepared by the Uniform Code Committee Draftsmen in 1952. It eliminated "horizontal" privity as a requirement for warranty actions. However, that version of 2–318 took no position on the requirement of vertical privity. *White & Summers, supra,* at 586.

The purpose of the original version of section 2–318, which remains unchanged in Indiana today, was to give standing to certain non-privity plaintiffs to sue as third-party beneficiaries of the warranties that a buyer received under a sales contract. *Hawkland, supra,* at 769. That version of section 2–318 provided only that the benefit of a warranty automatically extended to the buyer's family, household, and houseguests. *Id., supra,* at 775. It was intended to, and did, accomplish its goal of "freeing any such beneficiaries

from any technical rules as to [horizontal] privity." U.C.C. § 2–318 cmt. 2. Some states refused to enact this version of section 2–318, and others adopted nonuniform versions of the statute. *Hawkland, supra,* at 777. In 1966, in response to this proliferation of deviant versions of a purportedly uniform code, the drafters proposed three alternative versions of section 2–318. Only California, Louisiana, and Texas have failed to adopt one of these three versions of section 2–318.[5]

The majority of states, including Indiana, retained or adopted the 1952 version of section 2–318, which now appears in the Uniform Commercial Code as "Alternative A."[6] Alternative B provides that "any natural person who may reasonably be expected to use, consume or be affected by the goods and who is injured in person by breach of warranty" may institute a breach of warranty action against the seller. U.C.C. § 2–318 cmt. 3. Alternative B expands the class of potential plaintiffs beyond family, household, and guests, and also implicitly abolishes the requirement of vertical privity because the seller's war-

ranty is not limited to "his buyer" and persons closely associated with that buyer.[7] *See Hawkland, supra,* at 789. Alternative B is applicable only to claims for personal injury.

Because Alternatives A and B of 2–318 are limited to cases where the plaintiff is "injured in person," they do not *authorize* recovery for such loss. But neither do they *bar* a non-privity plaintiff from recovery against such a remote manufacturer for direct economic loss.... Thus, Alternatives A and B of 2–318 do not prevent a court from abolishing the *vertical* privity requirement even when a non-privity buyer seeks recovery for direct economic loss.

*White & Summers, supra,* at 593 (emphasis in original).

Alternative C is the most expansive in eliminating the lack-of-privity defense. *White & Summers, supra,* at 593; *Hawkland, supra,* at 792. It provides that: "A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured

**5.** Texas has adopted a statute that leaves questions of horizontal and vertical privity for the courts. Tex. Bus. & Com.Code § 2.318 (2004) ("This chapter does not provide whether anyone other than a buyer may take advantage of an express or implied warranty of quality made to the buyer or whether the buyer or anyone entitled to take advantage of a warranty made to the buyer may sue a third party other than the immediate seller for deficiencies in the quality of the goods. These matters are left to the courts for their determination.") Louisiana has never enacted any part of Article 2 of the Uniform Commercial Code.

**6.** Alternative A has been adopted in the following states in addition to Indiana: Alaska, Arizona, Arkansas, Connecticut, District of Columbia, Florida, Georgia, Idaho, Illinois, Kentucky, Maryland, Michigan, Mississippi, Missouri, Montana, Nebraska, Nevada, New Jersey, New Mexico, North Carolina, Ohio,

Oklahoma, Oregon, Pennsylvania, Tennessee, Washington, West Virginia, and Wisconsin. *See Hawkland, supra,* at 778 n. 1. The Florida statute is a nonstandard version of Alternative A, and includes the purchaser's employees among those entitled to assert implied warranty. Fla. Stat. § 672.318 (2004). In addition, case law in Illinois and Pennsylvania has expanded the class of potential third party beneficiaries and defendants. *See, e.g., Whitaker v. Lian Feng Mach. Co.,* 156 Ill.App.3d 316, 108 Ill.Dec. 895, 509 N.E.2d 591, 595 (1987); and *Salvador v. Atlantic Steel Boiler Co.,* 457 Pa. 24, 319 A.2d 903, 906 (1974).

**7.** Indiana Code section 26–1–2–103(1)(a) defines "buyer" as "a person who buys or contracts to buy goods" and section 26–1–2–103(1)(d) defines "seller" as "a person who sells or contracts to sell goods." Indiana's version of the U.C.C. restricts those terms to direct buyers and direct sellers.

by breach of the warranty." *Hawkland, supra*, at 769. Alternative C expands the class of plaintiffs to include other nonpurchasers such as the buyer's employees and invitees, and bystanders. *Jane M. Draper*, Annotation, *Third–Party Beneficiaries of Warranties Under UCC § 2–318*, 100 A.L.R.3d 743 at §§ 5–6 (1980). Alternative C also eliminates the vertical privity requirement, but is not restricted to "personal" injury. Because Alternative C refers simply to "injury," plaintiffs sustaining only property damage or economic loss in some states have been held to have standing to sue under this language. *See, e.g., Milbank Mut. Ins. Co. v. Proksch*, 309 Minn. 106, 244 N.W.2d 105 (1976) (allowing purchaser's father to recover for residential property damage caused when their Christmas tree caught fire). This is consistent with the stated objective of the drafters that the third alternative follow "the trend of modern decisions as indicated by Restatement of Torts 2d § 402A (Tentative Draft No. 10, 1965) in extending the rule beyond injuries to the person." *Hawkland, supra*, at 770; *But see Nebraska Innkeepers, Inc. v. Pittsburgh–Des Moines Corp.*, 345 N.W.2d 124, 129 (Iowa 1984) (holding Alternative C did not permit non-privity plaintiffs to seek recovery solely for economic loss).

The commentaries to the UCC were careful to explain that these alternatives were not to be taken as excluding the development of the common law on the issue of vertical privity:

> [Alternative A] expressly includes as beneficiaries within its provisions the family, household and guests of the purchaser. Beyond this, the section in this form is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain.

U.C.C § 2–318, cmt. n. 3.

### F. *Privity as an Obsolete Requirement as Applied to Consumer Goods*

There is a split of authority in other jurisdictions with similar or identical versions of section 2–318 on the availability of implied warranty claims by remote purchasers, particularly if only economic loss is claimed, as in the present case.[8] Courts

---

8. Several jurisdictions that have adopted Alternative A have abolished privity. *See Morrow v. New Moon Homes*, 548 P.2d 279, 291–92 (Alaska 1976); *Manheim v. Ford Motor Co.*, 201 So.2d 440 (Fla.1967); *Groppel Co., Inc. v. U.S. Gypsum Co.*, 616 S.W.2d 49, 58 (Mo.Ct.App.1981) (abolishing vertical privity and extending implied warranty to remote purchasers even when only economic loss is claimed); *Peterson v. N. Am. Plant Breeders*, 218 Neb. 258, 354 N.W.2d 625, 631 (1984); *Hiles Co. v. Johnston Pump Co.*, 93 Nev. 73, 560 P.2d 154, 157 (1977); *Spring Motors Distrib., Inc. v. Ford Motor Co.*, 98 N.J. 555, 489 A.2d 660, 676 (1985); *Old Albany Estates Ltd. v. Highland Carpet Mills, Inc.*, 604 P.2d 849, 852 (Okla.1979); *Spagnol Enters., Inc. v. Digital Equipment Corp.*, 390 Pa.Super. 372, 568 A.2d 948, 952 (1989); *Dawson v. Canteen Corp.*, 158 W.Va. 516, 212 S.E.2d 82, 82–83 (1975).

Others have retained the common law privity rule. *See Flory v. Silvercrest Indus.*, 129 Ariz. 574, 633 P.2d 383, 388 (1981); *Ramerth v. Hart*, 133 Idaho 194, 983 P.2d 848, 852 (1999) (upheld vertical privity requirement but left open the possibility of a different conclusion if the combination of the privity requirement and the economic loss rule proved unjust); *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W:3d 575, 579 (Ky.2004); *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 525 S.E.2d 441, 446 (2000); *Hupp Corp. v. Metered Washer Serv.*, 256 Or. 245, 472 P.2d 816 (1970); *Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 463 (Tenn. Ct.App.2003); *City of La Crosse v. Schubert, Schroeder & Associates, Inc.*, 72 Wis.2d 38, 240 N.W.2d 124, 126 (1976), *overruled on other grounds, Daanen & Janssen v. Cedarapids, Inc.*, 216 Wis.2d 395, 573 N.W.2d 842 (1998).

of other jurisdictions that have retained or adopted Alternative A note that the statute speaks only to horizontal privity, and is silent as to vertical privity. *See, e.g., Morrow v. New Moon Homes, Inc.,* 548 P.2d 279, 287 (Alaska 1976); *Kassab v. Central Soya,* 432 Pa. 217, 246 A.2d 848, 855 (1968), *overruled on other grounds, AM/PM Franchise Ass'n v. Atlantic Richfield Co.,* 526 Pa. 110, 584 A.2d 915, 926 (1990). As the Pennsylvania Supreme Court put it: "Merely to *read* the language [of § 2–318] is to demonstrate that the code simply fails to treat this problem. . . . There thus is nothing to prevent this court from joining in the growing number of jurisdictions which, although bound by the code, have nevertheless abolished vertical privity in breach of warranty cases." *Kassab,* 246 A.2d at 856 (emphasis in original). Indiana has not legislated on this issue since 1966 when the UCC adopted these three alternatives. More recently, the "Buyback Vehicle Disclosure" statute eliminated the lack-of-privity defense for actions under that section. *See* I.C. § 24–5–13.5–13(c) (1995). In short, the General Assembly in keeping Alternative A left to this Court the issue of to what extent vertical privity of contract will be required.

Courts that have abolished vertical privity have cited a variety of reasons. Principal among these is the view that, in today's economy, manufactured products typically reach the consuming public through one or more intermediaries. As a result, any loss from an unmerchantable product is likely to be identified only after the product is attempted to be used or consumed. *Hininger v. Case Corp.* 23 F.3d 124, 127 (5th Cir.1994) (In Texas, the privity requirement is not needed to assert a claim for breach of an implied warranty against a remote manufacturer of a finished product); *Reed v. City of Chicago,* 263 F.Supp.2d 1123, 1125 (N.D.Ill.2003) (Under Alternative A of 2–318, privity is no longer an absolute requirement for breach of warranty actions. Since benefit of paper gowns were for the protection of potentially suicidal detainees privity between the detainee and the manufacturer was not required for the warranty to apply); *Hubbard v. General Motors Corp.,* 39 U.C.C.2d (Callaghan) 83 (S.D.N.Y.1996) (buyer from dealer could sue manufacturer for direct economic loss for defective braking system in truck). Others have cited the concern that privity encourages thinly capitalized manufacturers by insulating them from responsibility for inferior products. *See Groppel Co., Inc. v. United States Gypsum Co.,* 616 S.W.2d 49, 59 (Mo.Ct.App.1981). Yet others have focused on the point that if implied warranties are effective against remote sellers it produces a chain of lawsuits or crossclaims against those up the distribution chain. *See Old Albany Estates, Ltd. v. Highland Carpet Mills, Inc.,* 604 P.2d 849, 851–52 (Okla.1979) ("To require vertical privity results in perpetuating a needless chain of actions whereby each buyer must seek redress from his immediate seller until the actual manufacturer is eventually reached."). And some focus on the reality in today's world that manufacturers focus on the consumer in communications promoting the product. *See Spring Motors Distribs., Inc. v. Ford Motor Co.,* 98 N.J. 555, 489 A.2d 660, 676–77 (1985) ("Eliminating the requirement of vertical privity is particularly appropriate in the present action where Spring Motors read advertisements published by Clark, specifically requested Clark transmissions, expected the transmissions to be incorporated into trucks to be manufactured by Ford, contracted with Ford only, and now seeks to recover its economic loss.").

Finally, some jurisdictions have abolished privity in warranty actions where only economic losses were sought based on the notion that there is "no reason to

distinguish between recovery for personal and property injury, on the one hand, and economic loss on the other." *Hiles Co. v. Johnston Pump Co.*, 93 Nev. 73, 560 P.2d 154, 157 (1977); *accord Salvador v. Atlantic Steel Boiler Co.*, 256 Pa.Super. 330, 389 A.2d 1148 (1978). A variance on this theme is the view that abolishing privity "simply recognizes that economic loss is potentially devastating to the buyer of an unmerchantable product and that it is unjust to preclude any recovery from the manufacturer for such loss because of a lack of privity, when the slightest physical injury can give rise to strict liability under the same circumstances." *Groppel*, 616 S.W.2d at 59. One court preserving the privity requirement expressed the view that "there may be cases where the plaintiff may be unfairly prejudiced by the operation of the economic loss rule in combination with the privity requirement." *Ramerth v. Hart*, 133 Idaho 194, 983 P.2d 848, 852 (1999).

 In Indiana, the economic loss rule applies to bar recovery in tort "where a negligence claim is based upon the failure of a product to perform as expected and the plaintiff suffers only economic damages." *Martin Rispens*, 621 N.E.2d at 1089. Possibly because of the economic loss rule, Goodin did not raise a negligence claim here. Furthermore, at oral argument Goodin's attorney pointed to the warranty disclaimer in the Buyer's Order as a bar to Goodin's ability to sue her direct seller, AutoChoice, which could then have sued Hyundai for reimbursement. This disclaimer, Goodin contends, precluded a chain of claims ultimately reaching the manufacturer. Therefore, Goodin claims that if this Court does not abolish the vertical privity requirement she will be left without a remedy for Hyundai's breach of its implied warranty of merchantability,

and Hyundai's implied warranty becomes nonexistent in practical terms.

 The basis for the privity requirement in a contract claim is essentially the idea that the parties to a sale of goods are free to bargain for themselves and thus allocation of risk of failure of a product is best left to the private sector. Otherwise stated, the law should not impose a contract the parties do not wish to make. The Court of Appeals summarized this view well:

> Generally privity extends to the parties to the contract of sale. It relates to the bargained for expectations of the buyer and seller. Accordingly, when the cause of action arises out of economic loss related to the loss of the bargain or profits and consequential damages related thereto, the bargained for expectations of buyer and seller are relevant and privity between them is still required.
>
> Implied warranties of merchantability and fitness for a particular use, as they relate to economic loss from the bargain, cannot then ordinarily be sustained between the buyer and a remote manufacturer.

*Richards*, 179 Ind.App. at 112, 384 N.E.2d at 1092 (citations omitted). We think that this rationale has eroded to the point of invisibility as applied to many types of consumer goods in today's economy. The UCC recognizes an implied warranty of merchantability if "goods" are sold to "consumers" by one who ordinarily ·deals in this product. Warranties are often explicitly promoted as marketing tools, as was true in this case of the Hyundai warranties. Consumer expectations are framed by these legal developments to the point where technically advanced consumer goods are virtually always sold under express warranties, which, as a matter of federal law run to the consumer without

regard to privity. 15 U.S.C. § 2310. Magnuson–Moss precludes a disclaimer of the implied warranty of merchantability as to consumer goods where an express warranty is given. 15 U.S.C. § 2308. Given this framework, we think ordinary consumers are entitled to, and do, expect that a consumer product sold under a warranty is merchantable, at least at the modest level of merchantability set by UCC section 2–314, where hazards common to the type of product do not render the product unfit for normal use. *Cf. Allgood v. R.J. Reynolds Tobacco Co.*, 80 F.3d 168, 171 (5th Cir. 1996) (under Texas law, only actual sellers are liable, not trade associations nor public relations agents who play a role in distribution. "Even where a party has promoted a product, and made promises regarding that product, if the party is not the actual seller a claim for breach of warranty will not lie.").

Even if one party to the contract—the manufacturer—intends to extend an implied warranty only to the immediate purchaser, in a consumer setting, doing away with the privity requirement for a product subject to the Magnuson–Moss Warranty Act, rather than rewriting the deal, simply gives the consumer the contract the consumer expected. The manufacturer, on the other hand is encouraged to build quality into its products. To the extent there is a cost of adding uniform or standard quality in all products, the risk of a lemon is passed to all buyers in the form of pricing and not randomly distributed among those unfortunate enough to have acquired one of the lemons. Moreover, elimination of privity requirement gives consumers such as Goodin the value of their expected bargain, but will rarely do more than duplicate the Products Liability Act as to other consequential damages. The remedy for breach of implied warranty of merchantability is in most cases, including this one, the difference between "the value of the goods accepted and the value they would have had if they had been as warranted." I.C. § 26–1–2–714(2). This gives the buyer the benefit of the bargain. In most cases, however, if any additional damages are available under the UCC as the result of abolishing privity, Indiana law would award the same damages under the Products Liability Act as personal injury or damage to "other property" from a "defective" product. *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 2005 WL 236630 (Feb. 01, 2005).

For the reasons given above we conclude that Indiana law does not require vertical privity between a consumer and a manufacturer as a condition to a claim by the consumer against the manufacturer for breach of the manufacturer's implied warranty of merchantability.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ. concur.