## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 03 2020, 8:13 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Patrick A. Schuster
Crown Point, Indiana

ATTORNEY FOR APPELLEE

Laura S. Reed
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Crystal Foods Corporation,
*Appellant-Plaintiff,*

v.

B & K Equipment Company,
*Appellee-Defendant.*

June 3, 2020

Court of Appeals Case No.
19A-PL-2773

Appeal from the Lake Superior Court

The Honorable Kristina Kantar, Judge

Trial Court Cause No.
45D04-1506-PL-47

**Tavitas, Judge.**

## Case Summary

[1] Crystal Foods Corporation ("Crystal") appeals the trial court's grant of summary judgment to B&K Equipment Company ("B&K"). We affirm in part, reverse in part, and remand.

## Issues

Crystal raises two issues, which we consolidate and restate as whether the trial court properly granted summary judgment to B&K for breach of warranty. On cross-appeal, B&K also argues that the trial court erred by denying its motion for summary judgment regarding its statute of limitation defense.

## Facts

Crystal operated a gas station in Merrillville on property owned by Nuch Corporation ("Nuch"). In March 2007, Crystal entered into a contract with B&K to remove and replace an underground storage tank located at Crystal's gas station. B&K provided Crystal with a four-page "Proposal," which Crystal signed ("Contract"). Appellant's App. Vol. II p. 29. The first three pages of the Contract itemized and detailed the work B&K was to perform for Crystal. The Contract required B&K to "furnish material and labor to complete a tank replacement project" that included, in part: "[e]xcavat[ion], remov[al], clean[ing] and dispos[al] of the existing steel underground storage tanks"; "[f]urnish[ing] and install[ation of] a Xerxes, 22,000 gallon single wall fiberglass underground storage tank"; "[f]ill[ing] the excavation with compacted stone backfill"; and replac[ing] the concrete curb and "excavated pavement under the existing canopy with 6 [inch] thick fibermesh reinforced concrete." *Id.* Each of these three pages was signed by both B&K and Crystal. At the bottom of each of the three pages, the following language was included: "SEE TERMS AND CONDITIONS TO THIS PROPOSAL." *Id.* The third page of the Contract

included "TERMS", which detailed payment provisions and Crystal's failure to comply with the terms of the Contract.

[4] The fourth page of the Contract was titled "TERMS AND CONDITIONS" and was not signed by the parties. The page included the following boilerplate language:

> TITLE AND OWNERSHIP: Unless otherwise directed by customer, if this contract includes installation, it is a construction contract which is an agreement between this Contractor/Seller and the Purchaser/Owner to alter, improve, repair, replace, or erect real property. It is expressly agreed that title to and ownership of the fixtures included in this construction contract pass to the Purchaser/Owner upon permanent and complete installation of the fixtures to real estate. . . .
>
> If this contract does not include installation or if it is a contract with a valid tax-exempt organization or if a valid resale certificate has been issued, it is a sale of tangible personal property and it is expressly agreed that title and ownership of the fixtures pass upon delivery, prior to installation. . . .
>
> * * * * *
>
> If for any reason this contract is not paid in full within 90 days of completion of installation, it is agreed that in addition to collecting all balances due, the contractor shall have the right to remove the installed fixtures without written permission from or prior notice to the Purchaser/Owner and thereafter the fixtures shall become the personal property of Contractor and Contractor shall not be responsible for any damage to purchaser/owners property cause by such removal. . . .

GRANT OF SECURITY INTEREST: For sales of tangible personal property, Purchaser hereby grants and Seller retains a purchase money security interest in said product/equipment, including proceeds there from, for the purpose of securing Purchaser's obligation to make payment in full, until payment is received in full in cash or collected funds, at which time the security interest shall cease. . . . .

PAYMENT AND COLLECTION TERMS: It is expressly understood and agreed that payment in full shall be due upon completion of installation or delivery unless prior arrangements have been made and agreed to. . . .

WARRANTIES: All equipment/Product(s) and components carry a manufacturer's warranty, which is passed onto the purchaser according to the manufacturer's policy. No other warranties are either expressed or implied, including the warranty of merchantability and fitness for a particular purpose.

*Id.* at 32.

In 2008, the concrete in the area where B&K performed work settled and cracked. An engineering study concluded that the "3-inch size rock [used by B&K] was not a suitable backfill material." *Id.* at 36. The study concluded that the "settlement of old concrete pavement around the backfill area and movement in the gasoline island No. 7 & 8 is caused by the improper backfilling of the former [underground storage tank] area." *Id.* at 37. Crystal estimated its resulting damages at more than $312,000.00.

In June 2015, Crystal and Nuch filed a complaint against B&K and alleged breach of contract and negligence. Crystal's complaint alleged, in part, that:

B&K "owed a duty to [Crystal] to perform its work in a good and workmanlike manner"; B&K was contracted to excavate, remove, and replace an underground storage tank on the property; and there was "a deficiency in the design, planning, supervision, construction, or observation of construction on the improvement to the Property by B&K constituting a breach by B&K of the Contract." Appellant's App. Vol. II p. 14.

[7] B&K filed a motion for summary judgment and claimed: (1) Crystal's claim was barred because it was subject to a six-year statute of limitation for damage to real property pursuant to Indiana Code Section 34-11-2-7; (2) Crystal's claims were barred by the written disclaimer of implied warranties in the Contract; and (3) Nuch was not a party to the Contract. Crystal filed a response to B&K's motion for summary judgment. Crystal argued that: (1) the action was not barred by the statute of limitation because the ten-year statute of limitation for a written contract action pursuant to Indiana Code Section 34-11-2-11 applied; and (2) B&K's two-paragraph warranty argument was "devoid of substantive law and facts to support the argument." *Id.* at 42.

[8] After a hearing, the trial court granted summary judgment to B&K.[1] The trial court noted that Crystal did not dispute that Nuch was not a party to the Contract and did not dispute B&K's motion for summary judgment regarding the negligence claim. The trial court concluded that B&K's statute of limitation

---

[1] We were not provided with the transcript of this hearing.

argument failed because the ten-year statute of limitation for a breach of written contract applied. The trial court, however, agreed with B&K's warranty argument and found:

> Cited in the briefs before the Court is the case of *Peltz Construction Company v. Dunham*, 436 N.E.2d 892 (Ind. [Ct.] App. 1982). In *Peltz*, [t]he Court was asked to consider whether waterproofing work on a basement constituted "goods" under UCC, and whether a warranty existed, and if so, was breached, causing damages. *Id.* at 893. The UCC as adopted by Indiana, conveys additional rights and protections to a purchaser and "Indiana recognizes implied warranties of fitness for a particular purpose and implied warranties of merchantability," under the act. *Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 951-52 (Ind. 2005) (citing Ind. Code §§ 26-1-2-314, 315 (2003)). The "implied warranty of merchantability is imposed by operation of law for the protection of the buyer and must be liberally construed in favor of the buyer." *Frantz v. Cantrell*, 711 N.E.2d [856, 859 (Ind. Ct. App. 1999)].

> The Court, however in *Peltz* rejected the existence of a UCC claim or protection, stating such waterproofing work on a basement did not constitute "goods" as contemplated by the act. *Id.* The Court additionally stated that "in Indiana, a contract action which alleges a breach of warranty requires proof of four factors: 1) the existence of a warranty; 2) the breach of that warranty; 3) causation and 4) resulting damage." *Id.* at 894. The Court further held that where a warranty provides that work will be done in a workmanlike manner and with good materials, a plaintiff need not prove the reason for failure, but only that it did fail. *Id.* at 895 n.3.

> The heart of the dispute in the case above centers around Defendant's denial of the existence of any warranty. The court

must consider the language of the agreement and here the Proposal between the parties called for [B&K to] "[f]ill the excavation with compacted stone backfill," without further qualifications or limitation, and as to the evidence of a warranty itself, the "terms and conditions" state:

> WARRANTIES:  All equipment/Product(s) and components carry a manufacturer's warranty; which is passed on to the purchaser according to the manufacturer's policy.  No other warranties are either expressed or implied, including the warranty of merchantability and fitness for a particular purpose.

In contracts, "modification of warranties and limitations of remedy" are not per se unconscionable and any attempt to exclude or modify an implied warranty of merchantability must "mention merchantability" and any "limitation of the implied warranty of fitness must be in writing." *Hahn v. Ford Motor Co.*, 434 NE.2d 943, 948, 952 (Ind. Ct. App. 1982).  In Indiana, "unconscionability is a question of law" for a court and "the party raising the issue bears the burden of proof." *Martin Rispens & Sons v. Hall Farms*, 621 N.E.2d 1078, 1086 (Ind. Ct. App. 1993).[2]  In the present case, the Proposal between the parties specifically disclaimed any warranty and did so using the appropriate language for that purpose.  Such exclusion is not unconscionable and consequently Plaintiff's claims under contract are barred.

Appellant's App. Vol. II pp. 10-12.

---

[2] Abrogated by *Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 951-52 (Ind. 2005).

Crystal filed a motion to correct error and argued: (1) B&K's warranty argument was "woefully lacking" and B&K failed to meet its summary judgment burden; (2) the Uniform Commercial Code ("UCC") does not apply to this contract and "whether warranties under the UCC can be disclaimed is immaterial in this case"; and (3) Crystal's claim was for breach of contract, not breach of warranty. *Id.* at 51-52. B&K filed a response and argued: (1) B&K adequately argued in its motion for summary judgment that Crystal disclaimed any implied warranties; and (2) Crystal waived any argument that the implied warranty of workmanlike performance was different than other implied warranties. The trial court denied Crystal's motion to correct error. Crystal now appeals.

## Analysis

Summary judgment is appropriate only when the moving party shows there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *Erie Indem. Co. for Subscribers at Erie Ins. Exch. v. Estate of Harris by Harris*, 99 N.E.3d 625, 629 (Ind. 2018), *reh'g denied*; *see also* Ind. Trial Rule 56(C). Once that showing is made, the burden shifts to the nonmoving party to designate appropriate evidence to demonstrate the actual existence of a genuine issue of material fact. *Schoettmer v. Wright*, 992 N.E.2d 702, 705-06 (Ind. 2013). When ruling on the motion, the trial court construes all evidence and resolves all doubts in favor of the non-moving party. *Id.* at 706. We review the trial court's ruling on a motion for summary judgment de novo, and we take "care to ensure that no party is denied his day in

court." *Id.* "We limit our review to the materials designated at the trial level." *Gunderson v. State, Indiana Dep't of Nat. Res.*, 90 N.E.3d 1171, 1175 (Ind. 2018), *cert. denied*, 139 S. Ct. 1167 (2019).

## I. *Breach of Contract*

[11] Crystal argues that the trial court erred by granting B&K's motion for summary judgment regarding its breach of contract claim.[3] Crystal argues that the trial court erred by failing to recognize B&K's duty to perform its work in a workmanlike manner and that the trial court erred by finding the contract disclaimed B&K's duty to perform its work in a workmanlike manner.[4] Crystal argues that its claim is a breach of contract claim, not a breach of warranty claim. B&K argues that Crystal's breach of contract claim fails due to the warranty disclaimer in the Contract.

[12] "To prevail on a claim for breach of contract, the plaintiff must prove the existence of a contract, the defendant's breach of that contract, and damages resulting from the breach." *Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 937

---

[3] Crystal makes no argument regarding Nuch or the negligence claim. Accordingly, we address only Crystal's breach of contract claim.

[4] B&K argues that Crystal waived this argument by failing to raise it in its response to B&K's motion for summary judgment. B&K had the burden of demonstrating that it was entitled to summary judgment. B&K very briefly argued that implied warranties were disclaimed by the Contract's terms and conditions. Crystal responded that B&K's one-sentence argument related to the issue was waived and distinguished the cases cited by B&K. We were not provided with the transcript of the summary judgment hearing. In its motion to correct error, Crystal argued that this was a breach of contract claim, not a breach of warranty claim, and that the implied duty to perform work in a workmanlike manner was not disclaimed. We conclude that Crystal adequately argued to the trial court that the implied duty to perform work in a workmanlike manner was not disclaimed and that Crystal did not waive the issue.

(Ind. 2012). According to Crystal, its breach of contract claim is based on the implied duty of B&K to perform the work skillfully, carefully, and in a workmanlike manner. Our courts have held that[,] "[i]n a contract for work, there is an implied duty to do the work skillfully, carefully, and in a workmanlike manner." *INS Investigations Bureau, Inc. v. Lee*, 784 N.E.2d 566, 576 (Ind. Ct. App. 2003), *trans. denied*. The failure to do so may be a breach of contract. *Id.*

[13] These arguments require that we interpret the parties' Contract. The interpretation of a contract "is particularly well-suited for de novo appellate review, because it generally presents questions purely of law." *WellPoint, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 29 N.E.3d 716, 721 (Ind. 2015), *opinion modified on reh'g*, 38 N.E.3d 981 (Ind. 2015). Our goal in contract interpretation is "to determine the intent of the parties at the time that they made the agreement." *Care Grp. Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 752 (Ind. 2018). "We start with the contract language to determine whether it is ambiguous." *Id.* "If the language is unambiguous, we give it its plain and ordinary meaning in view of the whole contract, without substitution or addition." *Id.* This court must examine the plain language of the contract, read it in context and, whenever possible, construe it so as to render every word, phrase, and term meaningful, unambiguous, and harmonious with the whole. *City of Plymouth v. Michael Kinder & Sons, Inc.*, 137 N.E.3d 312, 315 (Ind. Ct. App. 2019).

[14] The warranty at issue here provided:

> WARRANTIES: All equipment/Product(s) and components carry a manufacturer's warranty, which is passed onto the purchaser according to the manufacturer's policy. No other warranties are either expressed or implied, including the warranty of merchantability and fitness for a particular purpose.

Appellant's App. Vol. II p. 32. This provision was included at the end of the "TERMS AND CONDITIONS" page of the Contract. In interpreting this provision, we begin by noting that the parties' Contract involved both the supply of services (excavation, removal of the old underground storage tanks, installation of the new tanks, construction of the new concrete pavement, etc.) and the provision of goods (the underground storage tanks and accessories). Accordingly, the Contract included language applicable to the sale of goods and language applicable to the provision of services.[5]

[15] The first sentence of the warranty discusses manufacturer's warranties and is clearly applicable to the sale of goods, such as the underground storage tanks.

---

[5] The Sales chapter of the Indiana Uniform Commercial Code ("UCC"), Ind. Code Chapter 26-1-2, "applies to transactions in goods," unless the context otherwise requires. Ind. Code § 26-1-2-102. Our Supreme Court has noted that "[m]any modern commercial transactions cannot be classified as transactions purely for goods or for services, but are 'mixed,' involving both goods and services." *Insul-Mark Midwest, Inc. v. Modern Materials, Inc.*, 612 N.E.2d 550, 553-54 (Ind. 1993). In *Insul-Mark*, our Supreme Court held that, where the transaction is mixed, "courts look to the agreement between the parties to determine their understanding about the predominant purpose of the contract." *Id.* at 554. This analysis is typically required to determine whether the UCC is applicable to a transaction. *See id.* at 556 ("Based upon the facts of this case as well as the well-reasoned conclusions of other courts, we hold as a matter of law that the thrust of the coating agreement between Kor-It and Modern Materials was predominantly for the performance of services. The U.C.C. does not apply to the transaction, and the parties' dispute is therefore governed by our common law."). Although the Contract contains many terms applicable to the sale of goods, neither party argues that the UCC warranty provisions are applicable here. Accordingly, we do not address the predominant purpose of the Contract.

The second sentence of the warranty is the sentence at issue here. The last portion of the second sentence specifically disclaims the warranty of merchantability and fitness for a particular purpose. The warranty of merchantability and the warranty of fitness for a particular purpose are UCC concepts. *See* Ind. Code § 26-1-2-315(1) ("Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is, unless excluded or modified under IC 26-1-2-316, an implied warranty that the goods shall be fit for such purpose."); Ind. Code § 26-1-2-314 ("Unless excluded or modified (IC 26-1-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."). Under the UCC, "to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." Ind. Code § 26-1-2-316. The second sentence of the warranty was clearly meant to disclaim the UCC implied warranties of fitness and merchantability pursuant to Indiana Code Section 26-1-2-316.

[16] B&K relies on the first portion of the second sentence— "[n]o other warranties are either expressed or implied"—for the proposition that *all* warranties associated with the Contract were disclaimed. This short phrase, however, is contained in a paragraph that pertains only to UCC concepts. In fact, most of

the "TERMS AND CONDITIONS" pages discusses B&K's provision of goods. Reading the Contract as a whole, we conclude that the warranty paragraph was unambiguously meant to address UCC concerns, not to disclaim all possible warranties of any kind.

[17] Accordingly, we conclude that B&K did not disclaim the implied duty of B&K to perform the work skillfully, carefully, and in a workmanlike manner. The designated evidence demonstrated genuine issues regarding whether B&K properly compacted the stone, resulting in cracked and settled concrete. As such, the trial court erred by granting B&K's motion for summary judgment on Crystal's breach of contract claim.

## II. Statute of Limitation

[18] On cross-appeal, B&K argues that the trial court erred by denying its motion for summary judgment regarding its statute of limitation argument. "Statutes of limitation 'are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost.'" *V. Ganz Builders & Dev. Co., Inc. v. Pioneer Lumber, Inc.*, 59 N.E.3d 1025, 1032 (Ind. Ct. App. 2016) (quoting *Russo v. S. Developers, Inc.*, 868 N.E.2d 46, 48 (Ind. Ct. App. 2007)), *trans. denied*. "'[I]t is the nature or substance of the cause of action, rather than the form of the action, which determines the applicability of the statute of limitations.'" *Barrow v. City of Jeffersonville*, 973 N.E.2d 1199, 1205 (Ind. Ct. App. 2012) (quoting *Shideler v. Dwyer*, 275 Ind. 270, 276, 417 N.E.2d 281, 285 (1981)), *trans. denied*. The determination of the

applicable statute of limitation is a matter of statutory construction that is "purely a question of law." *Januchowski v. N. Indiana Commuter Transp. Dist.*, 905 N.E.2d 1041, 1045 (Ind. Ct. App. 2009), *trans. denied*.

[19] On appeal, B&K argues that Crystal's cause of action accrued on June 3, 2008, when Crystal received the report regarding the cause of the damaged concrete. Crystal filed its complaint on June 26, 2015, more than seven years later. B&K argues that the six-year statute of limitation for damage to real property applies. *See* Ind. Code 34-11-2-7 ("The following actions must be commenced within six (6) years after the cause of action accrues: . . . (3) Actions for injuries to property other than personal property . . . ."). Crystal, however, argues that the ten-year statute of limitation for breach of a written contract applies. *See* Ind. Code 34-11-2-11 ("An action upon contracts in writing . . . must be commenced within ten (10) years after the cause of action accrues."). The trial court found that the ten-year statute of limitation applied and that Crystal's claim was not barred by the statute of limitation.

[20] In support of its argument, B&K relies primarily on *Habig v. Bruning*, 613 N.E.2d 61 (Ind. Ct. App. 1993), *trans. denied*. In *Habig*, homeowners filed a complaint against contractors for breach of contract, breach of warranty of habitability, and breach of warranty of workmanship after the addition to their house began leaking. There is no indication in the opinion that a written contract between the contractors and the homeowners existed. The arguments presented to the Court centered on when the statute of limitation began to run. With no analysis or discussion regarding the proper statute of limitation, our

Court noted that the statute of limitation "for damage to real property caused by breach of contract and warranty" was applicable. *Habig*, 613 N.E.2d at 64.

[21] The trial court and Crystal rely upon *Powers & Sons Constr. Co. v. Healthy East Chicago*, 919 N.E.2d 137 (Ind. Ct. App. 2009). There, a building owner entered into a written contract with a construction manager for the construction of a health service facility. The building owner filed a complaint against a construction manager for breach of contract after its building developed cracks in the floors, walls, and ceilings. The construction manager argued that a two-year statute of limitation for injury to personal property pursuant to Indiana Code Section 34-11-2-11 or the six-year statute of limitation under Indiana Code Section 34-11-2-7 was applicable. The building owner argued that the ten-year statute of limitation for breach of a written contract was applicable.

[22] We agreed with the building owner and held that the ten-year statute of limitation for breach of a written contract was applicable because "[t]he relationship between the parties and [the construction manager's] duties and responsibilities as general contractor arose from the contract rather than from a standard of care imposed by law." *Powers & Sons*, 919 N.E.2d at 143. The building owner's complaint sought "to recover damages sustained as a result of [the construction manager's] failure to perform according to the contract; that is, to hire and supervise subcontractors and construct a building conforming to the plans and specifications suitable for [the building owner's] needs." *Id.* at 143-44. Accordingly, we held that the complaint was governed by the ten-year statute of limitation applicable to written contracts.

We do not find *Habig* persuasive here. Crystal entered into a written contract with B&K for the removal and replacement of an underground storage tank. The contract included filling the excavation with compacted stone backfill and replacing the removed pavement with six-inch thick reinforced concrete. When the concrete settled due to the improper backfill, Crystal filed a complaint against B&K for breach of contract. The nature and substance of this action pertains to B&K's obligations under the written contract. Under these circumstances, as in *Powers & Sons*, we conclude that the ten-year statute of limitation for a breach of written contract action applies.

## Conclusion

The trial court properly denied B&K's motion for summary judgment regarding its statute of limitation defense. The trial court, however, erred by granting B&K's motion for summary judgment regarding Crystal's breach of contract claim. We affirm in part, reverse in part, and remand.

Affirmed in part, reversed in part, and remanded.

Riley, J., and Mathias, J., concur.