CURL, APPELLEE, *v.* VOLKSWAGEN OF AMERICA, INC., APPELLANT.

[Cite as *Curl v. Volkswagen of Am., Inc.,*
114 Ohio St.3d 266, 2007-Ohio-3609.]

(No. 2006–0115—Submitted January 10, 2007—Decided July 18, 2007.)

O'DONNELL, J.

{¶ 1} Two questions of law are presented to this court for resolution on this appeal: one, does Ohio law require privity of contract between parties in order to recover on a claim for breach of an implied warranty pursuant to the federal Magnuson–Moss Warranty–Federal Trade Commission Improvement Act, Section 2301 et seq., Title 15, U.S.Code; and two, as a matter of law, what constitutes a new motor vehicle, as that term is used in R.C. 1345.71 et seq., Ohio's Nonconforming New Motor Vehicle Law, also known as the Lemon Law.

{¶ 2} In the matter before us, Volkswagen of America, Inc., an automobile manufacturer, appeals from a decision of the Trumbull County Court of Appeals, which affirmed the trial court's order granting summary judgment in favor of

David Curl, the purchaser of a 2002 Volkswagen Beetle, and held that Volkswagen breached its implied warranty of merchantability and violated Ohio's Lemon Law. For the reasons that follow, we reverse that decision.

{¶ 3} As the court of appeals reflected in its opinion, Stadium Lincoln–Mercury, d.b.a. Stadium Volkswagen ("Stadium") and located in Youngstown, Ohio, purchased a 2002 Volkswagen Beetle from Volkswagen of America and placed it into service as part of its rental fleet on July 31, 2001. See *Curl v. Volkswagen of America, Inc.,* Trumbull App. No. 2004–T–0112, 2005-Ohio-6420, 2005 WL 3274992, at ¶ 3.

{¶ 4} Thereafter, on March 12, 2002, Volkswagen issued a recall notice for certain vehicles, including the 2002 model-year Beetle, to repair or replace wiring that posed a risk of fire in the antilock braking systems. Stadium, however, never performed the recall service work on the 2002 Beetle in its rental fleet.

{¶ 5} On June 24, 2002, Stadium sold the Beetle to David Curl for $17,000. The purchase agreement disclosed that the car had been used as a rental vehicle and that it registered 10,435 miles on the odometer. On August 19, 2002, after driving it for 4,149 miles, Curl had the Beetle towed to Stadium because the engine would start but not stay running and because smoke was emanating from it. At that time, the dealership provided Curl with a substitute vehicle. The dealership's service technicians ultimately discovered that wiring in the antilock braking system melted and burned, and as a result, they repaired the vehicle pursuant to its express warranty. Stadium made the vehicle available to Curl on November 12, 2002, 84 days after he brought the car in for repairs.

{¶ 6} On December 12, 2002, Curl sued Volkswagen in the Trumbull County Court of Common Pleas and raised three claims: first, breach of a written warranty, pursuant to the federal Magnuson–Moss Warranty Act; second, breach of an implied warranty of merchantability, also pursuant to the Magnuson–Moss Warranty Act; and, third, violation of the Ohio Lemon Law.

{¶ 7} Curl and Volkswagen filed cross-motions for partial summary judgment with respect to the implied warranty and Lemon Law claims, and the trial court granted partial summary judgment in favor of Curl on both issues. Specifically, the court ruled that, notwithstanding a lack of contractual privity between Volkswagen and Curl, Volkswagen had violated its implied warranty of merchantability pursuant to the Magnuson–Moss Warranty Act and had breached its duty, pursuant to the Lemon Law, to conform the vehicle to its express warranty. Consequently, in accordance with the remedies provided in R.C. 1345.71 et seq., the trial court ordered Volkswagen to retake possession of the vehicle, refund Curl's payments on the vehicle, and pay off any automobile loan. The court also scheduled a hearing to determine damages and granted leave to Curl to seek attorney fees and costs. Curl and Volkswagen then agreed to dismiss the express warranty claim, and the trial court determined, pursuant to Civ.R. 54(B),

that no just reason existed to delay appeal from its order granting summary judgment.

{¶ 8} Volkswagen appealed to the Trumbull County Court of Appeals, contending that lack of privity precluded the breach of implied warranty claim and further contending that the 2002 Beetle was not a new motor vehicle and, therefore, not subject to the protections of the Lemon Law. Curl responded that privity is not required for a breach of implied warranty claim pursuant to Magnuson–Moss Warranty Act and that the Lemon Law applied to his vehicle because he had reported the nonconformity within one year of the date that he took delivery of the vehicle.

{¶ 9} The court of appeals affirmed the trial court's order and concluded that Volkswagen had breached its implied warranty of merchantability and violated Ohio's Lemon Law because the vehicle qualified as a new motor vehicle for purposes of R.C. Chapter 1345. Volkswagen appealed those determinations to this court, and we granted discretionary review in order to determine first, whether an automobile purchaser may assert a claim for breach of implied warranty of merchantability, pursuant to the Magnuson–Moss Warranty Act, against a manufacturer with whom the purchaser is not in privity; second, whether, under the Magnuson–Moss Warranty Act, a manufacturer may limit the remedies available for violation of an implied warranty arising from state law; and, third, whether Curl's vehicle qualifies as a new motor vehicle for purposes of the Ohio Lemon Law. We address each issue in turn.

### Magnuson–Moss Warranty Act

{¶ 10} Congress enacted the Magnuson–Moss Warranty Act, Section 2301 et seq., Title 15, U.S.Code, in 1975 in response to what it perceived to be widespread misuse by merchants of express warranties and disclaimers. Taylor, Read the Fine Print: Alabama Supreme Court Rules that Binding Arbitration Provisions in Written Warranties are Okay (2001), 2001 J.Disp.Resol. 165, fn. 2. The Act establishes a federal right of action for consumers to enforce written or implied warranties against suppliers, warrantors, or service contractors. *Hyundai Motor Am., Inc. v. Goodin* (Ind.2005), 822 N.E.2d 947, 951. In addition to these protections, the Act limits the ability of manufacturers to disclaim or modify implied warranties in cases where they have offered express warranty protection. Id. The Act does not, however, establish new implied warranties or otherwise modify the implied warranties existing according to state law. Instead, the Act looks to the governing state law and adopts the implied warranty protections already established.

{¶ 11} Relevant to this case is Section 2310(d)(1), Title 15, U.S.Code, which states that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a

written warranty, *implied warranty,* or service contract, may bring suit for damages and other legal and equitable relief." (Emphasis added.) Section 2301(7) defines "implied warranty" as "an implied warranty arising under State law * * * in connection with the sale by a supplier of a consumer product."

{¶ 12} Because the Act does not alter state law regarding implied warranty claims, nothing in the Act obviates state law privity requirements for these actions, and, where necessary, a party is required to establish privity to maintain a claim. *Abraham v. Volkswagen of Am., Inc.* (C.A.2, 1986), 795 F.2d 238, 249. Therefore, "whether privity is a prerequisite to a claim for breach of implied warranty under the Magnuson–Moss Act * * * hinges entirely on the applicable state law." *Voelker v. Porsche Cars N. Am., Inc.* (C.A.7, 2003), 353 F.3d 516, 525; see, also, *Gill v. Blue Bird Body Co.* (C.A.11, 2005), 147 Fed.Appx. 807; *Haugland v. Winnebago Indus.* (D.Ariz.2004), 327 F.Supp.2d 1092; *Mesa v. BMW of N. Am., L.L.C.* (Fla.App.2005), 904 So.2d 450; *Mekertichian v. Mercedes–Benz U.S.A., L.L.C.* (2004), 347 Ill.App.3d 828, 283 Ill.Dec. 324, 807 N.E.2d 1165.

{¶ 13} The first issue in this case, therefore, is whether Ohio law requires privity of contract between a consumer and an automobile manufacturer in order for the consumer to maintain an action against the manufacturer for breach of implied warranty.

{¶ 14} Volkswagen contends that automobile purchasers may assert such a claim only against parties with whom they are in privity, i.e., only against those parties immediately connected in the distribution chain. It urges that because it did not sell the vehicle to Curl, no privity of contract exists, which precludes Curl from successfully prosecuting this claim.

{¶ 15} Curl contends that Ohio law does not require privity in this situation, but that to the extent it is required, the dealer from whom he purchased the automobile acted as Volkswagen's agent, establishing the requisite privity.

{¶ 16} This court considered privity of contract in the Ohio Uniform Commercial Code context in *United States Fid. & Guar. Co. v. Truck & Concrete Equip. Co.* (1970), 21 Ohio St.2d 244, 50 O.O.2d 480, 257 N.E.2d 380, in which Truck and Concrete Equipment Company manufactured and sold a truck to Auto Fleet Lease Company, an agency that leased the truck to Nicholson Concrete and Supply Company. Nicholson insured the truck with United States Fidelity and Guaranty Company ("Fidelity"), but during Nicholson's use of the truck, the concrete mixer fell off the chassis, damaging the chassis and the mixer. Fidelity paid Nicholson, its insured, for the damage and then, as subrogee, filed suit against Truck and Concrete, the manufacturer, alleging that Truck breached its implied warranty of merchantability pursuant to Ohio's Uniform Commercial Code.

{¶ 17} In rejecting Fidelity's claim for injury to personal property based on a contract of sale, we noted that no contract existed between Truck and Concrete and Fidelity, just as no contract existed between Truck and Concrete and Nicholson, Fidelity's subrogor. Id. at 250, 50 O.O.2d 480, 257 N.E.2d 380. We held that "[i]n order to maintain an action in contract for injury *to personal property based upon a contract of sale* [emphasis sic], which injury is alleged to be caused by a 'breach of implied warranty of merchantability' under the provisions of the Ohio Uniform Commercial Code covering contracts of sale, the plaintiff *must* [emphasis added] establish a contractual relationship with the defendant." Id., paragraph one of the syllabus.

{¶ 18} We again faced a similar issue in *Lawyers Coop. Publishing Co. v. Muething* (1992), 65 Ohio St.3d 273, 603 N.E.2d 969, in which we reaffirmed that privity is required to maintain a breach of implied warranty claim. In *Muething,* Thaddeus Muething, an attorney, purchased a set of legal form books from Lawyers Cooperative Publishing Company. Muething used these books to prepare promissory notes for a client. The state later indicted Muething for violating securities laws because he failed to inform his client that, in Ohio, promissory notes can constitute securities. When Lawyers Cooperative sued Muething to collect a balance he owed for his purchase of the books, he counterclaimed, arguing that Lawyers Cooperative was negligent in writing the books with respect to the securities-law information, that the books were defective for the same reason, and that Lawyers Cooperative had breached an implied warranty.

{¶ 19} In discussing what claims Muething could maintain against Lawyers Cooperative, we stated that "absent a contractual relationship between the plaintiff and defendant, an action based upon contract for breach of warranty *does not exist.*" (Emphasis added.) *Muething,* 65 Ohio St.3d 273, 277, 603 N.E.2d 969, citing *Lonzrick v. Republic Steel Corp.* (1966), 6 Ohio St.2d 227, 230, 35 O.O.2d 404, 218 N.E.2d 185.

{¶ 20} In addition, *Haynes v. George Ballas Buick–GMC Truck* (Dec. 21, 1990), Lucas App. No. L–89–168, 1990 WL 210413, is similar to the present case. There, Claudette Haynes purchased a new 1986 Buick Century, manufactured by General Motors Corporation, from the George Ballas dealership. After she experienced several mechanical problems with the car, she sued George Ballas and General Motors, alleging breaches of contract and of express and implied warranties under the Uniform Commercial Code and violation of the Magnuson–Moss Warranty Act.

{¶ 21} The court determined that Haynes could not maintain her Uniform Commercial Code and Magnuson–Moss Warranty Act breach of implied warranty claims against the manufacturer, General Motors, and held that, "with regard to a

claim of a breach of implied warranties, damages are recoverable without proof of vertical privity of contract *only* if state law permits such recovery. * * * * In Ohio, damages are recoverable for breach of implied warranties only if there is privity of contract between the parties." (Emphasis added.) *Haynes* at *11.

{¶ 22} The appellate court also noted that "reasonable minds could only conclude that [Haynes] could not maintain a cause of action for breach of implied warranties under the [Magnuson–Moss Warranty] Act because there is no privity of contract between her and the manufacturer." Id. at *12.

{¶ 23} Federal courts applying Ohio law have also held that automobile purchasers may assert a contract claim for breach of implied warranty only against parties with whom they are in privity of contract.

{¶ 24} In *Walsh v. Ford Motor Co.* (D.D.C.1984), 588 F.Supp. 1513, for example, automobile purchasers in several states sued Ford Motor Company, alleging that defective transmissions in certain models caused the vehicles to slip from park into reverse. The district court, after noting *United States Fid. & Guar. Co.* stated that privity must exist if an action is based on contract, held that "actions for breach of implied warranty that sound in contract require the presence of vertical privity," id. at 1534, and that the parties that purchased their vehicles in Ohio could not pursue their claims in contract without such a relationship. Id. at 1535.

{¶ 25} Similarly, in *Abraham v. Volkswagen of Am., Inc.* (C.A.2, 1986), 795 F.2d 238, purchasers of Volkswagen Rabbits from several states filed suit against Volkswagen, alleging that certain model year Rabbits had defective oil systems. The Second Circuit Court of Appeals stated that "[b]oth the statutory language and the legislative history [of the Magnusson–Moss Warranty Act] indicate that Congress did not intend to supplant state law with regard to privity in the case of implied warranties," id. at 249, citing *Walsh,* and that "Ohio require[s] privity." Id. at 249, fn. 12.

{¶ 26} Thus, longstanding Ohio jurisprudence provides that purchasers of automobiles may assert a contract claim for breach of implied warranty only against parties with whom they are in privity. Having reviewed the authority in Ohio, as well as that of other jurisdictions, we see no compelling reason to stray from precedent. A claim for breach of implied warranty, though similar to a tort action, arises pursuant to the law of sales codified in Ohio's Uniform Commercial Code. The privity requirement, which remains absent in strict liability tort actions, allows sellers of goods to define their scope of responsibility and provides a greater degree of foreseeability regarding potential claimants. *Seely v. White Motor Co.* (1965), 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145; see, also, Duesenberg, The Manufacturer's Last Stand: The Disclaimer (1964), 20 Bus.Law. 159,

161. To permit a claimant to recover without establishing vertical privity blurs the distinction between contract and tort.

{¶ 27} A significant number of states retain privity requirements in some form for parties asserting claims of breach of implied warranty. See, e.g., *State Farm Fire & Cas. Co. v. J.B. Plastics, Inc.* (Ala.1987), 505 So.2d 1223; *Bailey v. Montgomery Ward & Co.* (1967), 6 Ariz.App. 213, 431 P.2d 108; *Burr v. Sherwin Williams Co.* (1954), 42 Cal.2d 682, 268 P.2d 1041; *Koellmer v. Chrysler Motors Corp.* (Conn.App.1970), 6 Conn.Cir.Ct. 478, 276 A.2d 807; *S & R Assoc., L.P. III v. Shell Oil Co.* (Del.Super.1998), 725 A.2d 431; *Chrysler Corp. v. Wilson Plumbing Co., Inc.* (1974), 132 Ga.App. 435, 208 S.E.2d 321; *Ontai v. Straub Clinic & Hosp., Inc.* (1983), 66 Hawai'i 237, 659 P.2d 734; *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.* (1975), 97 Idaho 348, 544 P.2d 306; *Szajna v. Gen. Motors Corp.* (1986), 115 Ill.2d 294, 104 Ill.Dec. 898, 503 N.E.2d 760; *Tomka v. Hoechst Celanese Corp.* (Iowa 1995), 528 N.W.2d 103; *Professional Lens Plan, Inc. v. Polaris Leasing Corp.* (1985), 238 Kan. 384, 710 P.2d 1297; *Williams v. Fulmer* (Ky.1985), 695 S.W.2d 411; *Arthur Jaffee Assocs. v. Bilsco Auto Serv., Inc.* (1983), 58 N.Y.2d 993, 461 N.Y.S.2d 1007, 448 N.E.2d 792; *Gregory v. Atrium Door & Window Co.* (1992), 106 N.C.App. 142, 415 S.E.2d 574; *Price v. Gatlin* (1965), 241 Or. 315, 405 P.2d 502; *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.* (Tenn.App.2003), 131 S.W.3d 457; *Baughn v. Honda Motor Co., Ltd.* (1986), 107 Wash.2d 127, 727 P.2d 655; *Dippel v. Sciano* (1967), 37 Wis.2d 443, 155 N.W.2d 55.

{¶ 28} Similarly, Ohio continues to require privity as to contract claims. In Ohio, purchasers of automobiles may assert a contract claim for breach of implied warranty of merchantability, pursuant to the Magnuson–Moss Warranty Act, only against parties with whom they are in privity of contract.

{¶ 29} The dissent contends that this court's holdings in *Inglis v. Am. Motors Corp.* (1965), 3 Ohio St.2d 132, 32 O.O.2d 136, 209 N.E.2d 583, *Lonzrick v. Republic Steel Corp.* (1966), 6 Ohio St.2d 227, 35 O.O.2d 404, 218 N.E.2d 185, and *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267, stand for the proposition that an action for breach of an implied warranty may be maintained in the absence of privity. These cases, however, are factually and legally distinguishable.

{¶ 30} In *Temple*, we noted that *Inglis* "provided the consumer with a cause of action in *tort*, based upon the breach of an *express* warranty, notwithstanding the lack of a contractual relationship between plaintiff and defendant," based upon the manufacturer's advertising to the public. (Emphasis added.) *Temple*, 50 Ohio St.2d at 320–321, 4 O.O.3d 466, 364 N.E.2d 267. We further recognized that *Lonzrick* dispensed with the express warranty rationalization and adopted the

doctrine of strict liability in *tort* in Ohio. Id. at 321, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 31} *Inglis* involved an express warranty, upon which the purchaser allegedly relied. *Inglis,* 3 Ohio St.2d 132, 32 O.O.2d 136, 209 N.E.2d 583, paragraph three of the syllabus. But here, Curl agreed to dismiss his express warranty claim and sought to recover based upon an implied warranty of merchantability. Both *Lonzrick* and *Temple* sought to impose strict product liability in *tort* for personal injuries sustained as a result of alleged product defects. *Lonzrick,* 6 Ohio St.2d at 228, 35 O.O.2d 404, 218 N.E.2d 185; *Temple,* 50 Ohio St.2d at 320, 4 O.O.3d 466, 364 N.E.2d 267. In contrast, here, Curl seeks to impose contract, rather than tort, liability against the manufacturer of his allegedly defective vehicle for damage to the car itself, and asks this court to dispense with the requirement of privity of contract for this implied warranty claim.

{¶ 32} Here, Curl is not in privity with Volkswagen because, in Ohio, vertical privity exists only between immediate links in the distribution chain. See *Hyundai Motor Am.,* 822 N.E.2d at 952. Volkswagen sold the vehicle to Stadium for use as a rental vehicle. Only after Stadium used the Beetle for that purpose did it sell the car to Curl.

{¶ 33} Curl also argues that his relationship with Stadium, and Stadium's relationship with the manufacturer, Volkswagen, establishes privity under the principles of agency law. However, that is not the case here. Restatement of the Law 2d, Agency (1958), Section 14J, provides that "[o]ne who receives goods from another for resale to a third person is not thereby the other's agent in the transaction: whether he is an agent for this purpose or is himself a buyer depends upon whether the parties agree that his duty is to act primarily for the benefit of the one delivering the goods to him or is to act primarily for his own benefit." Although Stadium is an authorized dealership of Volkswagen for warranty repairs, and although the purchase agreement between Stadium and Curl contains a Volkswagen emblem, in this case, Stadium purchased the Beetle primarily for its own benefit as a rental vehicle without any intent to benefit Volkswagen through its actions. Only after it used the Beetle as a rental vehicle did Stadium sell the automobile to Curl. The principles of agency, therefore, do not create the requisite privity in this instance given these facts.

{¶ 34} Volkswagen also asserts that it may limit the remedies available according to the Magnuson–Moss Warranty Act by providing a remedy for any alleged breach in its expressed warranty. Our determination above moots this issue because, even if the Magnuson–Moss Warranty Act prohibited such a limitation on remedies, Curl cannot successfully pursue a claim for breach of implied warranty. Thus, there is nothing to limit. We therefore decline to reach this issue.

## Lemon Law

{¶ 35} Next, we consider whether this vehicle is a new motor vehicle as that term is used in Ohio's Lemon Law, R.C. 1345.71 et seq. Volkswagen argues that the 2002 Beetle is not a new motor vehicle, because Stadium had purchased it, used it as a rental vehicle for nearly one year, and registered 10,435 miles on the odometer before selling it to Curl as a rental vehicle. Curl, on the other hand, asserts that the vehicle was new because on August 19, 2002, when he brought it to Stadium for repairs, the Beetle had less than 18,000 miles registered on the odometer and was within one year of the date he purchased it from Stadium. He argues further that this court should apply the definition of new motor vehicle contained in R.C. 4517.01(C), which states that a " '[n]ew motor vehicle' means a motor vehicle, the legal title to which has never been transferred by a manufacturer, remanufacturer, distributor, or dealer to an ultimate purchaser."

{¶ 36} R.C. 1345.72 provides as follows: "(A) If a new motor vehicle does not conform to any applicable express warranty and the consumer reports the nonconformity to the manufacturer, its agent, or its authorized dealer during the period of one year following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier, the manufacturer, its agent, or its authorized dealer shall make any repairs as are necessary to conform the vehicle to such express warranty, notwithstanding the fact that the repairs are made after the expiration of the appropriate time period.

{¶ 37} "(B) If the manufacturer, its agent, or its authorized dealer is unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any nonconformity after a reasonable number of repair attempts, the manufacturer, at the consumer's option and subject to division (D) of this section, either shall replace the motor vehicle with a new motor vehicle acceptable to the consumer or shall accept return of the vehicle from the consumer and refund each of the following:

{¶ 38} "(1) The full purchase price;

{¶ 39} "(2) All incidental damages, including, but not limited to, any fees charged by the lender or lessor for making or canceling the loan or lease, and any expenses incurred by the consumer as a result of the nonconformity, such as charges for towing, vehicle rental, meals, and lodging." [1]

---

1. {¶ a} In addition, R.C. 1345.73 provides:

{¶ b} "It shall be presumed that a reasonable number of attempts have been undertaken by the manufacturer, its dealer, or its authorized agent to conform a motor vehicle to any applicable express warranty if, during the period of one year following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier, any of the following apply:

{¶ c} "(A) Substantially the same nonconformity has been subject to repair three or more times and either continues to exist or recurs;

{¶ 40} R.C. 1345.71 contains the definitions that apply to the Lemon Law but does not define new motor vehicle. Curl has asserted that the Lemon Law should utilize the definition of new motor vehicle set forth in R.C. 4517.01(C), supra. However, R.C. 4517.01 expressly states that the definitions it sets forth are "[a]s used in sections 4517.01 to 4517.65 of the Revised Code," which precludes their application elsewhere in the Revised Code. Our purpose is to interpret what the General Assembly has written and not to rewrite, add to, or subtract from what the legislature has promulgated.

{¶ 41} Instead, the language used by the legislature in R.C. 1345.72(A) refers to new motor vehicles about which a "consumer reports the nonconformity to the manufacturer, its agent, or its authorized dealer during the period of one year following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier." See, also, R.C. 1345.73. In this context, the General Assembly has chosen to include all vehicles that fit within its dual category description. Hence, the term new motor vehicle, as used in R.C. 1345.72, refers to a vehicle within the period of one year following the date of its original delivery or during the first 18,000 miles of its operation, whichever occurs earlier. Thus, the legislature has created a two-pronged consideration for determining what constitutes a new motor vehicle in the state of Ohio for purposes of Lemon Law protection: the length of time since its original delivery date and the number of miles it has been driven.

{¶ 42} In applying that definition to the facts of this case, we first note that Curl satisfies the definition of a consumer, in conformity with R.C. 1345.71(A), because he purchased the 2002 Beetle from Stadium. No dispute exists about his status as a consumer.

{¶ 43} Next, we examine the record to determine the original delivery date of this vehicle. Although Curl contends that because he purchased the vehicle on June 24, 2002, we should consider that as the original delivery date of this vehicle (to him), the record before us indicates that this vehicle had been delivered to Stadium on July 31, 2001, when Stadium purchased it from Volkswagen and placed it into service in the dealership's rental fleet.

{¶ 44} Thus, the original delivery of this vehicle occurred upon delivery to its first titled owner, and Curl's position that the date of transfer to a subsequent

---

{¶ d} "(B) The vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days;

{¶ e} "(C) There have been eight or more attempts to repair any nonconformity;

{¶ f} "(D) There has been at least one attempt to repair a nonconformity that results in a condition that is likely to cause death or serious bodily injury if the vehicle is driven, and the nonconformity either continues to exist or recurs."

owner should serve as the date of original delivery is not well taken. Hence, we conclude that the original delivery date of this vehicle was July 31, 2001.

{¶ 45} The other relevant consideration in the statute is the mileage on the vehicle. At the time Curl purchased the vehicle on June 24, 2002, the purchase agreement indicated an odometer reading of 10,435 miles. Hence, because it had less than the 18,000 miles referenced in R.C. 1345.72(A), and because it was within one year of its original delivery date, the Beetle met the definition of a new motor vehicle for purposes of Ohio's Lemon Law at the time Curl purchased it.

{¶ 46} Curl, however, presented the vehicle for repairs on August 19, 2002, when it had 14,584 miles registered on the odometer. Despite the fact that he had driven the vehicle for only a few weeks following his purchase, Curl cannot present a valid Lemon Law claim. Lemon Law coverage applies only to a consumer who "reports the nonconformity to the manufacturer, its agent, or its authorized dealer during the period of one year following the date of original delivery [of the vehicle] or during the first eighteen thousand miles of operation, *whichever is earlier.*" (Emphasis added.) Here, Curl reported the nonconformity more than one year after the original delivery of this vehicle to Stadium. At that time, the vehicle no longer qualified as a new motor vehicle according to R.C. 1345.71 et seq.

### Conclusion

{¶ 47} Accordingly, the judgment of the court of appeals is reversed for the reasons outlined in this opinion.

*Judgment reversed.*

MOYER, C.J., LUNDBERG STRATTON, O'CONNOR and CUPP, JJ., concur.

LANZINGER, J., concurs in judgment only.

PFEIFER, J., concurs in part and dissents in part.

---

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 48} I concur in the majority opinion's conclusion that "Curl reported the nonconformity more than one year after the original delivery of this vehicle," and, therefore, concur in the holding that Ohio's Lemon Law, R.C. 1345.71 et seq., does not apply. I write separately because the case law of Ohio supports a conclusion that an action for breach of warranty can be maintained in the absence of privity.

{¶ 49} In *Inglis v. Am. Motors Corp.* (1965), 3 Ohio St.2d 132, 32 O.O.2d 136, 209 N.E.2d 583, paragraph three of the syllabus, this court stated that "[p]rivity of contract is not necessary in an action based on breach of warranty where one

purchases an automobile in reasonable reliance upon representations made in advertising of the manufacturer of such automobile in mass communications media to the effect that its automobiles are trouble-free, economical in operation and built and manufactured with a high quality of workmanship and such purchaser suffers damage in the form of diminution of value of the automobile attributable to latent defects not ascertainable at the time of purchase."

{¶ 50} In *Lonzrick v. Republic Steel Corp.* (1966), 6 Ohio St.2d 227, 35 O.O.2d 404, 218 N.E.2d 185, paragraph one of the syllabus, citing *Inglis,* 3 Ohio St.2d 132, 209 N.E.2d 583, this court stated that "[t]he plaintiff in a products liability case is not restricted to prosecuting his action on the basis of negligence alone but may proceed in an action in tort based upon the theory of an implied warranty, notwithstanding that there is no contractual relationship between the plaintiff and the defendant."

{¶ 51} In *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 320, 4 O.O.3d 466, 364 N.E.2d 267, this court stated that "[i]n *Lonzrick* this court traced the 'slow, orderly and evolutionary development' in this area, and noted that *Rogers v. Toni Home Permanent Co.* (1958), 167 Ohio St. 244, 4 O.O.2d 291, 147 N.E.2d 612, and *Inglis v. American Motors Corp.* (1965), 3 Ohio St.2d 132, 209 N.E.2d 583, provided the consumer with a cause of action in tort, based upon the breach of an express warranty, notwithstanding the lack of a contractual relationship between plaintiff and defendant."

{¶ 52} *Inglis, Lonzrick,* and *Temple* stand for the proposition that an action for breach of a warranty can be pursued in the absence of privity. The majority opinion focuses instead on *United States Fid. & Guar. Co. v. Truck & Concrete Equip. Co.* (1970), 21 Ohio St.2d 244, 50 O.O.2d 480, 257 N.E.2d 380, and *Lawyers Coop. Publishing Co. v. Muething* (1992), 65 Ohio St.3d 273, 603 N.E.2d 969. *Fidelity* does not support the majority opinion so much as contradict it. *Fidelity* quotes *Lonzrick* for the proposition that a plaintiff " 'may proceed in an action in tort based upon the theory of an implied warranty, notwithstanding that there is no contractual relationship between the plaintiff and the defendant.' " *Fidelity,* 21 Ohio St.2d at 251, 50 O.O.2d 480, 257 N.E.2d 380. The action in *Fidelity* was for injury to personal property and no contractual relationship existed. The court held that the action could not be maintained because it was outside the statute of limitations for a tort action. Id. But the principle of *Lonzrick* survived, acknowledged and unquestioned.

{¶ 53} The majority opinion accurately quotes *Muething* as stating that "absent a contractual relationship between the plaintiff and defendant, an action based upon contract for breach of warranty does not exist." *Muething,* 65 Ohio St.3d at 277, 603 N.E.2d 969, citing *Lonzrick,* 6 Ohio St.2d at 230, 35 O.O.2d 404,

218 N.E.2d 185. But the quote from *Muething* is clearly a misreading of *Lonzrick*, which in syllabus law said the exact opposite of the quoted passage.

{¶ 54} In short, this court has on three separate occasions, twice in syllabus law, held that an action for breach of an implied warranty may be maintained in the absence of privity. Twice this court has sort of said that an action for breach of a warranty may not be maintained in the absence of privity—both times its logic or language was flawed or readily distinguishable. After reviewing each of these cases, I am convinced that the weight of authority favors appellee's position. We should follow *Inglis*, *Lonzrick*, and *Temple* and hold that an action for breach of an implied warranty may be maintained in the absence of privity.

Luxenburg & Levin, L.L.C., Mitchel E. Luxenburg, and David B. Levin, for appellee.

Kehoe & Associates, L.L.C., Robert D. Kehoe, and J. Brian Kenney, for appellant.