[Cite as *Martin v. Kings Ford, Inc.*, 2015-Ohio-409.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ALAN D. MARTIN, | : | APPEAL NO. C-140252 |
| Plaintiff-Appellant, | : | TRIAL NO. A-1201657 |
| and | : | |
| M. SUE MARTIN, | : | *O P I N I O N.* |
| Plaintiff, | : | |
| vs. | : | |
| KINGS FORD, INC., | : | |
| Defendant-Appellee, | : | |
| and | : | |
| FORD MOTOR COMPANY, INC., | : | |
| and | : | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE, | : | |
| Defendants. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  February 6, 2015

*The Helbling Law Firm, L.L.C.,* and *John J. Helbling,* for Plaintiff-Appellant,

*Strauss Troy Co. LPA, Charles C. Ashdown* and *Stephen E. Schilling,* for Defendant-Appellee.


Please note:  this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1}   Plaintiff-appellant Alan Martin appeals the trial court's decision denying his summary-judgment motion against Kings Ford, Inc., ("Kings") and granting Kings' summary-judgment motion in an action brought by Martin and his wife, Sue, stemming from multiple problems the Martins encountered with a new vehicle they purchased from Kings, and Kings' subsequent failure to repair their vehicle.   The evidence presented in conjunction with the summary-judgment motions shows that Kings could not repair or service the vehicle under the manufacturer's warranty without the permission of the manufacturer, Ford Motor Company ("Ford"), and the Martins never requested that Kings provide any service or repair outside the warranty.   Thus, we agree with the trial court that no genuine issues of material fact remain to be decided in Martin's action against Kings, and Kings is entitled to judgment as a matter of law.

{¶2}   On December 21, 2009, Martin purchased a new 2010 Ford Escape for his wife from Kings.   The vehicle came with a "New Vehicle Limited Warranty" from Ford, which included a three-year/36,000-mile "bumper-to-bumper" warranty. Martin and Kings entered into a written contract for Martin to purchase the vehicle, which expressly disclaimed any warranties:

> ALL WARRANTIES, IF ANY, BY A MANUFACTURER OR SUPPLIER
>
> OTHER THAN DEALER ARE THEIRS, <u>NOT</u> DEALERS, AND ONLY
>
> SUCH MANUFACTURER OR OTHER SUPPLIER SHALL BE LIABLE
>
> FOR PERFORMANCE UNDER SUCH WARRANTIES, UNLESS
>
> DEALER FURNISHES PURCHASER WITH A SEPARATE WRITTEN
>
> WARRANTY OR SERVICE CONTRACT MADE BY DEALER ON ITS

2

OWN BEHALF. DEALER HEREBY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE IN CONNECTION WITH THE VEHICLE * * *.

{¶3} In March 2010, Sue drove the vehicle to a drugstore near her home to run an errand. Sue parked the car, took the key out of the ignition, and exited from the car. While she stood in the doorway of the car prior to closing the door, the vehicle began to roll backward in the parking lot. The door struck Sue in the face, but she stopped the vehicle by using her hand to press in the parking break.

{¶4} After the rolling incident, the Martins made an appointment with the service department at Kings. At that time, Kings became aware that the key to the vehicle could be removed from the ignition even when the vehicle was in reverse. In April 2010, Kings fixed the ignition assembly to the vehicle at no cost to the Martins as provided under the Ford warranty and returned the vehicle to the Martins.

{¶5} After retrieving the vehicle from the April 2010 service appointment, the Martins continued to experience problems with the vehicle, including deceleration on interstate highways and unusual transmission noises, so the Martins made another service appointment at Kings for May. Kings later cancelled that appointment upon learning that Sue had allegedly suffered personal injury as a result of the rolling incident, and in June 2010, the Martins met with Matt Huber at Kings to discuss Sue's injuries. Sue indicated at the meeting that she wanted reimbursement for her medical expenses to the extent not covered by her insurance. Huber then communicated the discussions with the Martins to Ford.

{¶6}   The Martins continued to experience even more problems with the vehicle, and in July 2010, the Martins called Kings because they could not get the vehicle to move backward or forward.   Once the Martins retained counsel, Kings eventually sent a tow-truck driver to the Martins' home on July 30, 2010, to tow the vehicle to Kings in accordance with the Ford warranty.   Given the Martins' possible claims as a result of the rolling incident, however, Ford would not allow Kings to proceed under the warranty with any further service of the vehicle.

{¶7}   In August 2010, Kings performed a repair estimate on the vehicle at the request of Ford, although the information was not relayed to the Martins at that time.   The estimate was for a complete transmission replacement.   By October 2010, the Martins, through counsel, indicated that they no longer wanted Kings to repair the vehicle, but that they wanted their vehicle replaced.

{¶8}   The Martins filed suit against Ford and Kings in May 2012, raising several causes of actions.   The causes of action against Kings included claims under Ohio's Lemon Law, the Consumer Sales Practices Act ("CSPA"), the Magnuson-Moss Warranty Act ("MMWA"), conversion, fraud, and negligence.   Kings and the Martins filed summary-judgment motions.   In a single entry, the trial court denied the Martins' motion and granted Kings' motion, and the trial court included a Civ.R. 54(B) certification in the entry.   This appeal by Martin ensued.

{¶9}   In two assignments of error, Martin appeals the trial court's decision denying his motion for summary judgment against Kings and granting Kings' motion for summary judgment.   Martin only appeals the trial court's decision as to three claims: (1) MMWA; (2) CSPA; and (3) negligence.

4

{¶10} Under Civ.R. 56(C), a motion for summary judgment may be granted only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party. *See Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996); *V.R. v. Cincinnati-Hamilton Cty. Community Action Agency*, 1st Dist. Hamilton No. C-140230, 2014-Ohio-5061, ¶ 8. This court reviews a ruling on summary judgment de novo. *V.R.* at ¶ 8.

{¶11} The MMWA, 15 U.S.C. 2301 et seq., provides consumers with a cause of action "to enforce written or implied warranties against suppliers, warrantors, or service contractors." *Curl v. Volkswagen of Am., Inc.*, 114 Ohio St.3d 266, 2007-Ohio-3609, 871 N.E.2d 1141, ¶ 10. Nothing in the MMWA requires a supplier to provide a warranty; however, the MMWA sets forth minimum standards that must be met once a warranty is provided. *See Lawhorn v. Joseph Toyota, Inc.,* 141 Ohio App.3d 153, 155, 750 N.E.2d 610 (2d Dist.2001).

{¶12} Martin argues that Kings' failure to repair the transmission on the vehicle within a reasonable time breached express or implied warranties owed to Martin, and such a breach amounted to a violation of the MMWA. Martin relies on 15 U.S.C. 2304(a)(1), which provides that a warrantor, pursuant to a written warranty, "must as a minimum remedy such consumer product within a reasonable time and without charge, in the case of a defect, malfunction, or failure to conform with such written warranty[.]"

5

{¶13} Martin's claim under the MMWA fails because Kings did not provide any warranties to him. In the retail contract between Martin and Kings, Kings expressly disclaimed any warranties, express or implied. *See* R.C. 1302.29(B) (permitting written disclaimers of implied warranties). Ford Motor Company, not Kings Ford, Inc., entered into a written warranty with Martin. Therefore, Martin's MMWA claim fails as a matter of law, and the trial court correctly granted summary judgment to Kings as to this claim.

{¶14} Martin also alleges that Kings' conduct in towing the vehicle to Kings, failing to communicate the transmission problem with the vehicle, and failing to timely repair or replace the vehicle violated the CSPA.

{¶15} The CSPA prohibits unfair or deceptive acts and unconscionable acts or practices by suppliers in consumer transactions whether they occur before, during, or after the transaction. *See* R.C. 1345.02(A) and 1345.03(A). "[T]he CSPA defines 'unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving, while 'unconscionable acts or practices' relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue." *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791.

{¶16} Martin complains that Kings failed to provide written documentation as required by Ohio Adm.Code 109:4-3-13 when the tow-truck driver arrived to tow the vehicle and such failure amounts to a violation of the CSPA. Ohio Adm.Code 109:4-3-13(C)(14) makes a supplier's failure to provide a consumer, upon request, an itemized receipt for any vehicle left with the supplier for repair or service a deceptive act or practice. In this case, although Kings eventually towed the vehicle, Kings did

not intend to repair or service the vehicle because Ford would not allow Kings to proceed under the warranty with any further repairs of the vehicle, nor did the Martins request repair or service from Kings outside the warranty. Thus, Kings did not violate Ohio Adm.Code 109:4-3-13.

{¶17} Martin also argues that Kings' repeated failure to repair the vehicle and failure to communicate to the Martins the transmission problem with the vehicle once the vehicle had been towed violated the CSPA. The actions on the part of Kings of which Martin complains are not attributable to Kings. Because of the ongoing personal-injury investigation, Ford prevented the vehicle from being repaired under the warranty until a resolution had been reached with regard to the personal-injury case. Moreover, the Martins never requested that Kings perform service or repair outside the warranty. Therefore, Kings is entitled to summary judgment on Martin's CSPA claim, too.

{¶18} Finally, Martin appeals the trial court's judgment in favor of Kings on Martin's negligence claim. In order to succeed on a negligence claim, a plaintiff must establish that the defendant owed the plaintiff a duty and that the defendant breached that duty. *See Ellis v. Time Warner Cable, Inc.*, 1st Dist. Hamilton No. C-120083, 2013-Ohio-240, ¶ 6.

{¶19} Martin alleges that Kings violated "various statutory duties"; however, we have already determined that Kings did not violate the MMWA or the CSPA, and Martin has not pointed to any other statutory duty that Kings may have violated. Martin also argues that Kings violated its obligation to repair the vehicle and to act in good faith towards the Martins. Again, Kings had no authority to proceed with repairs to the vehicle under the Ford warranty, and Kings communicated this to the

Martins.  Thus, Martin has not shown that Kings breached any duties owed to him. *See id.*  Therefore, the trial court did not err in granting summary judgment to Kings on Martin's negligence claim.

{¶20}  In conclusion, we determine that the trial court correctly granted summary judgment to Kings and denied Martin's summary-judgment motion, and we overrule Martin's first and second assignments of error challenging the trial court's decision.  The judgment of the trial court is affirmed.

Judgment affirmed.

**HENDON, P.J.,** and **CUNNINGHAM, J.,** concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.